**STATE of Utah, Plaintiff and Respondent,**

v.

**Thomas Eugene DAVIS, Defendant and Appellant.**

**No. 870221-CA.**

Court of Appeals of Utah.

Feb. 21, 1989.

---

Elizabeth Bowman, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Salt Lake City, for plaintiff and respondent.

Before BENCH, GARFF and GREENWOOD, JJ.

GARFF, Judge:

Appellant Thomas E. Davis appeals the trial court's denial of his motion for return of money taken from his possession at the time of his arrest. We reverse.

On October 30, 1985, appellant and four other persons were arrested and charged with two counts of forgery. Appellant was searched at the time of his arrest. Cash, in the amount of $277.38, was found in his possession and was impounded by police as evidence.

Initially, one of the five suspects pled guilty to the charges. However, on February 3, 1986, the state moved to dismiss

charges against three of the other defendants, including appellant. Appellant immediately requested return of the $277.38. No other party claimed ownership of this money.

Utah Code Ann. § 77–24–2 (1982) states, in relevant part, that:

[p]roperty so obtained which is not needed as evidence shall be returned to the owner if he may lawfully possess it.... When the prosecuting attorney ... becomes aware that the property is not needed he shall give written notice to the owner. Upon proof of ownership and of lawfulness of possession satisfactory to the prosecuting attorney, the prosecuting attorney shall give the owner written authorization which shall entitle the owner to receive the property from the person having custody of it.

The prosecutor determined that the money was no longer needed as evidence, so, pursuant to section 77–24–2, he notified appellant's counsel that he was prepared to authorize return of the money upon appellant's satisfactory proof of ownership.

At a meeting on February 10, 1986, appellant presented to the prosecutor an affidavit stating that he was the lawful owner of the money. This affidavit stated, "I, Thomas E. Davis, am the lawful owner of the $277.00 taken from me at the time of my arrest. Dated this 6th day of February, 1986. s/ Thomas E. Davis[.]" Upon advice of counsel, appellant declined, however, to be questioned under oath regarding his rightful ownership of the money. Because appellant refused to be questioned, the prosecutor declined to authorize return of the money.

In response, appellant's counsel filed a motion to compel return of the money and noticed it up for hearing. On June 13, 1986, after argument and briefing, the trial court entered a memorandum decision denying appellant's motion to compel, finding that the prosecutor was entitled to withhold the funds because of appellant's conclusory affidavit and refusal to answer questions regarding his ownership of the funds. The trial court also determined that the present proceeding, since it was ancillary to a criminal case, was the proper forum to determine whether the prosecutor had abused his discretion in refusing to return the money, rather than a separate civil proceeding.

On June 19, 1986, appellant and his attorney again met with the prosecutor. Under oath, appellant answered questions as to how he had come to possess the money. He stated that he had obtained some of it by doing detail work at an auto paint shop, most of it by selling property at swap meets, and the rest of it from miscellaneous sources. He did not produce any evidence other than his testimony to support these assertions. The prosecutor refused to authorize return of the money until a detective could verify or refute appellant's statements.

On July 15, 1986, appellant's counsel filed a motion for an evidentiary hearing. At this hearing, both appellant and the state presented witnesses. The prosecutor testified that he was not prepared to authorize return of the money to appellant because (1) the detective had been unable to contact persons mentioned by appellant so could not affirm or refute appellant's statements made in the June 19 meeting, and (2) based on statements of the state's investigator and counsel for one of the other defendants, it was likely that all of the money in question did not belong to appellant but included proceeds from the forgery.

The trial court denied appellant's motion for return of personal property. As a result, the state has held the $277.38 since October 30, 1985.

Appellant, because of indigency, requested that the state bear the cost of preparing the hearing transcripts and, again, moved to compel return of the money. The trial court entered its findings of fact, conclusions of law and order denying appellant's motions for return of personal property and transcript preparation at state expense.

Appellant raises numerous issues on appeal. Because we reverse the trial court's

judgment, we find it unnecessary to address all of these issues.

■ The term "forfeiture" applies to the involuntary divestiture of specific property, without compensation, in consequence of some default or act forbidden by law. *Woitchek v. Isenberg*, 151 Colo. 544, 379 P.2d 392, 394 (1963). Among the traditional purposes of forfeiture legislation are punishing criminal activity and making it unprofitable. *State v. Curran*, 291 Or. 119, 628 P.2d 1198, 1203 (1981); *see also Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 686–87, 94 S.Ct. 2080, 2093–94, 40 L.Ed.2d 452 (1974), *reh'g denied* 417 U.S. 977, 94 S.Ct. 3187, 41 L.Ed.2d 1148 (1974); *State v. One 1978 Chevrolet Corvette*, 8 Kan.App.2d 747, 667 P.2d 893, 895–96 (1983). In appropriate cases, forfeiture is consistent with legitimate governmental interests, such as deterrence and punishment of criminal conduct. *Calero–Toledo*, 416 U.S. at 666–667, 94 S.Ct. at 2048.

■ The state may not retain legally seized evidence indefinitely without filing criminal charges before a *de facto* forfeiture occurs. *Awaya v. State*, 5 Hawaii App. 547, 705 P.2d 54, 61 (1985); *see also United States v. Premises Known as 608 Taylor Ave.*, 584 F.2d 1297, 1302 (3rd Cir. 1978). "Moreover, 'a defendant has a right to property *lawfully* seized where the government no longer has reason for its retention.'" *Awaya*, 705 P.2d at 61 (quoting *State v. Brighter*, 1 Haw.App. 248, 617 P.2d 1226, 1229 (1980) (emphasis in original)).

■ In the present case, the state has held the money for more than two and one-half years since dropping criminal charges against appellant. It no longer has any evidentiary reason to retain the money, and its retention of the money is not based upon any formal findings of wrongful conduct. Therefore, we find that the state has used section 77–24–2 to create a *de facto* forfeiture.

In *Mr. Lucky Messenger Serv., Inc. v. United States*, 587 F.2d 15 (7th Cir.1978), the government seized $65,000 from the claimant and withheld it from him for over seventeen months without bringing charges against him. In deciding whether the government's conduct was justified, the Seventh Circuit indicated that:

[T]he Government, of course, is not required to secure an indictment immediately after it seizes property.... But if no charges are filed for nearly one and one-half years after the property was seized, and the Government is unable to present evidence justifying such a delay, constitutional violations emerge which would seem on equitable principles to mandate that the property be returned. *Id.* at 17.

■ Appellant argues that the operation of section 77–24–2 has deprived him of his due process rights. There is no due process violation involved in depriving a person of *per se* contraband, i.e., property which is inherently injurious to the public welfare and, therefore, illegal to possess. *See State v. Durst*, 235 Kan. 62, 678 P.2d 1126, 1128–29 (1984); *Curran*, 628 P.2d at 1203. However, derivative contraband, property which is legal to possess when used in the normal course of affairs but illegal to possess when used in violation of law, is afforded greater legal protection. *Curran*, 628 P.2d at 1203. Even though a "party claiming the right to return of property cannot recover contraband or stolen goods," *State v. Everett Dist. Justice Court*, 90 Wash.2d 794, 585 P.2d 1177, 1180 (1978), money is "inherently legal, and is not contraband unless used in an unlawful manner." *Awaya*, 705 P.2d at 61.

■ Our legislature has promulgated various forfeiture provisions in furtherance of the public interest. *See, e.g.*, Utah Code Ann. § 32A–13–3 (1986) (alcoholic products) and § 58–37–13 (1986) (controlled substances). Section 58–37–13, for example, contains an elaborate procedural framework for the imposition of forfeiture. The framework includes a provision for the filing of complaints, petitions, service of notice, hearings in district court, and presentation of evidence by the state. Forfeiture is then determined by the court upon a preponderance of the evidence.

In contrast, section 77–24–2 provides no such procedural framework. There is no provision for a hearing, and the prosecutor, rather than a judicial officer, is the sole arbiter of the ownership of property. The burden of going forward is on the claimant, not on the state.

Furthermore, a "statute should be looked at in its entirety and in accordance with the purpose which was sought to be accomplished." *Salt Lake City v. Salt Lake County*, 568 P.2d 738, 741 (Utah 1977). Section 77–24–2 does not evidence a legislative intent to deter criminal behavior or punish offenders. An examination of the statutory language leads us to conclude that section 77–24–2 was designed merely to guide prosecutors in disposing of property taken as evidence. The title of the statute, "Return of property not needed as evidence—Procedure," contained within a chapter entitled, "Disposal of Property Received by a Peace Officer," suggests this conclusion. *See Shelter America Corp. v. Ohio Casualty and Ins. Co.*, 745 P.2d 843, 845 (Utah Ct.App.1987) (the title or preamble of a statute may aid in correctly interpreting and applying the statute). Likewise, other sections of the chapter refer to safekeeping, receipts, and the sale of unclaimed property. In fact, the entire chapter appears to be more analogous to the Uniform Unclaimed Property Act, Utah Code Ann. §§ 78–44–1 to –40 (1987), than to the various forfeiture statutes. Consequently, the language and context of section 77–24–2 must be interpreted to preclude forfeiture as a legislative intent. Coercing a forfeiture would be an unconstitutional application of the statute. Forfeiture is simply not available for this purpose.

We conclude that appellant had a right to the return of his money since section 77–24–2 is not a forfeiture statute, and may not be used in a manner which constitutes a forfeiture.

Appellant next raises the issue of whether the determination of the ownership of property seized pursuant to section 77–24–2 is criminal or civil in nature, and, if criminal, whether he has the right to court-appointed counsel and state payment of trial transcription costs.

Even though the effect of a forfeiture, because of its similarity to a fine, may be criminal, the form of the action is essentially civil and does not require the "full panoply of criminal procedural safeguards." *Curran*, 628 P.2d at 1204; *see also One 1978 Chevrolet Corvette*, 667 P.2d at 896. Therefore, we find that appellant, in spite of his indigency, is not entitled to either representation or preparation of a transcript at state expense.

Because these issues are dispositive, we do not reach appellant's other issues. The judgment of the trial court is reversed. The money shall be returned to appellant.

BENCH and GREENWOOD, JJ., concur.